[Civ. No. 3637. Third Appellate District.—December 27, 1928.]

F. C. STREFF et al., Respondents, v. GOLD MEDAL CREAMERY COMPANY (a Corporation), Appellant.

John G. Munholland and Lane & Lane for Appellant.

Denio, Hart, Traubman & Simpson for Respondents.

TUTTLE, J., *pro tem.*—This is an action upon a written contract to recover $1,780.30 alleged to be due on account of 4,685 gallons of milk sold defendant. Judgment went for plaintiff in the sum of $1,764.72, and this appeal is prosecuted therefrom.

The complaint is in the ordinary form for milk sold and delivered between the dates of October 1, 1924, and November 8, 1924. The answer denies the allegations, and then proceeds, in fourteen pages, to set up three counterclaims. The first of these sets up an express and agreed warranty as to the quality of the milk sold. It is alleged that between June 1, 1924, and November 8, 1924, plaintiff delivered milk to defendant which was not in accord with the terms of said warranty, and that defendant was thereby damaged in the sum of $1,929.81. The second counterclaim is based upon a breach of the contract in reference to the delivery by plaintiff of the names of certain customers to defendant. It is stated that plaintiff refused to deliver such names, and that he continued to solicit the business of said customers after the sale of the goodwill of the business to defendant. Eighteen hundred dollars is asked on account of this item. The third counterclaim is in reality a cross-complaint. The claim is made that plaintiff, after the sale of the goodwill of his milk business to defendant, continued to solicit his old customers, and started up, in the city of Long Beach, a

rival concern under a fictitious name. There is a prayer for judgment in the sum of $2,432.81, and for an injunction restraining plaintiff from soliciting said customers.

The court found against the defendant upon all the issues raised in his answer and cross-complaint. We are of the opinion that these findings are supported by the evidence.

A brief statement of the facts will shed considerable light upon the situation. On May 31, 1924, while plaintiff was the owner of a dairy and milk route, he entered into the following contract with defendant:

"Frank G. Streff and wife, Lou E., agrees to sell and Gold Medal Creamery Company agrees to buy the following described property:

"A bill of sale of all equipment of the Streff dairy at 1737 Temple avenue, together with the good will of said dairy, consisting of 3 milk routes, all bottles and cans and cases, all machinery and property (except residence), also 1 Dodge truck A42494, and 1 Reo truck 81389, for the sum of $2750.00, payable as follows:

"Escrow deposit 6–3–24, $1375.00; additional cash, $1375.00 on or before 30 days, and when you can deliver bill of sale to purchaser of above equipment.

"Said note to contain a bonus clause of —— days, unaccrued interest.

"The seller intends to auction his stock of cows now at the above address and purchaser agrees to remove the buildings and fences conveyed within 60 days after the auction sale of said cows.

"Fire insurance transferred to

"The above referred to certificate of title or continuation shall be issued by a title company in its usual form and be record title only, and the Marine Commercial and Savings Bank shall not be liable for secret defects of title not appearing of record, including forgery and false personation, either as to the instruments of record or those handled in this escrow. If seller deposits his papers as herein set forth, and purchaser fails to make further cash deposit, the Marine Commercial and Savings Bank is authorized to use the deposit for the expenses of this escrow and pay the remainder to the seller without further instructions.

"Possession of milk routes on June 1st, 1924, and seller hereby agrees to sell all milk to purchaser until date of

sale of cows at 38c per gallon in bottles F. O. B. at dairy. Purchaser to furnish all bottles.

"Search as to municipal liens is hereby waived as far as the bank is concerned.

"Taxes for ——— are to be paid by ———.

"Regular escrow charges to be paid by ———.

"Commission of $——— to be paid by seller to ———.

"Commission of $——— to be paid by purchaser to ———.

"Dated 5-31, 1924.

> "FRANK C. STREFF,
> "1737 Temple Avenue, Seller.
> "GOLD MEDAL CREAMERY CO.,
> "By J. H. CHAMNES, Pres.,
> "Purchaser."

On June 1st defendant took possession of said dairy, and plaintiff commenced to deliver the milk referred to in said contract, and continued to deliver the same up to November 8th. It is admitted that the contract expired upon October 1st, but defendant continued to accept deliveries of said milk in the usual manner until November 8th. Upon that date defendant refused to pay plaintiff for the milk delivered after October 1st, and plaintiff thereupon ceased to make further deliveries.

The court allowed plaintiff the *contract price* for the milk delivered after the expiration of said contract, and defendant contends that only the *market value* of said milk should have been allowed. While the contract may have expired upon October 1st, defendant continued thereafter to accept deliveries without any suggestion of a change in the terms or price, and under such circumstances we hold that the trial court was justified in finding that the contract price should prevail, even though the contract had expired. While no formal extension of the contract was entered into, by the undisputed acts and conduct of the parties such an extension was put into effect, and impliedly agreed upon.

At the trial defendant was permitted to introduce testimony upon an oral agreement between the parties, contemporaneous with said written contract, to the effect that plaintiff agreed to furnish milk of a certain quality, to wit, grade A. Plaintiff denied that there was any such conversation or agreement. Upon this testimony the court was

justified in finding, as it did, that there was no warranty of any character. ■ Furthermore, where an express warranty is pleaded, evidence of an implied warranty will not be permitted. (*Kullman, Salz & Co.* v. *Sugar Apparatus Mfg. Co.*, 153 Cal. 725 [96 Pac. 369].)

■ Certain rulings of the court are attacked in respect to proof of bacteria tests of the milk to establish its grade. The court having found, upon sufficient evidence, that there was no express warranty, the question as to whether or not the milk was class A is utterly immaterial and no prejudice resulted from the ruling. Furthermore, defendant admitted in open court that the milk was merchantable. There was nothing in the contract to show that any special grade or quality of milk was to be furnished. ■ The requirement of merchantability, assuming there was an implied warranty as to merchantability under section 1768 of the Civil Code, does not require that the goods be of first quality, or even that they shall be as good as the average of goods. (*Kenney* v. *Grogan*, 17 Cal. App. 527 [120 Pac. 433], quoting Williston on Sales.)

■ Error is predicated upon the refusal of the court to admit testimony showing the value of the milk as delivered and as it would have been had it complied with the warranty set up by defendant. As the court found there was no express warranty as pleaded by defendant, no prejudice could result from such ruling.

■ Other points are raised by appellant, but they are of minor importance and without merit. The crux of the whole matter is that defendant accepted deliveries of this milk for over five months. During all this time it had knowledge of the fact that the milk did not meet the requirements of their alleged guaranty. Such conduct should and does preclude them from prevailing in their defense which is based upon such guaranty, assuming that the existence of the same had been upheld by the trial court. (22 Cal. Jur. 983, sec. 60; *Union Oil Co.* v. *Purissima Oil Co.*, 181 Cal. 479 [185 Pac. 381].)

The judgment is affirmed.

Hart, J., and Finch, P. J., concurred.